1

2

3

UNITED STATES DISTRICT COURT

4

DISTRICT OF NEVADA

5

* * *

6

7

8

9

10

11

12

| | |
|---|---|
| STEVEN MARTUS, | 2:09-CV-00240-PMP-LRL |
| Plaintiff, | |
| v. | |
| JUSTIN TERRY, P#7421; SAMUAL | ORDER |
| CARRILLO, P#7165; and THOMAS | |
| CLEVENGER, P#7948, | |
| Defendants. | |

13        Presently before the Court is Defendants' Motion for Summary Judgment (Doc.

14   #38), filed on October 27, 2010.  Plaintiff filed an Opposition (Doc. #47) on November 29,

15   2010.  Defendants did not file a reply.

16   **I. BACKGROUND**

17        Plaintiff Steven Martus arrived in Las Vegas on the morning of December 31,

18   2008, to celebrate the New Year's holiday.  (Defs.' Mot. Summ. J. (Doc. #38) ["Defs.'

19   MSJ"], Ex. A at 31:9-17.)  At 3:20 p.m., the Las Vegas Metropolitan Police Department

20   ("LVMPD") received a call from Catherine Perez ("Perez") indicating Plaintiff was drunk,

21   had fired a gun twice outside her home, and drove away with the gun.  (Defs.' MSJ, Ex. B

22   at 1.)  Plaintiff states he fired the gun in "revelry" to celebrate the New Year's holiday.

23   (Defs.' MSJ, Ex. A at 36:25-37:1.)  Plaintiff asserts he shot the gun into the air, not at

24   Perez, but admits that the gunshots may have frightened her.  (Id. at 58:7-14.)

25   ///

26   ///

1    LVMPD Officers Defendants Justin Terry ("Terry") and Thomas Clevenger

2  ("Clevenger") were dispatched to the area and saw Plaintiff driving south on Nellis

3  Boulevard.  (Defs.' MSJ, Ex. J. at 1.)  The officers followed the vehicle and activated their

4  emergency lights and sirens.  (Id.)  Plaintiff pulled over and the officers attempted to

5  execute a stop.  (Id.)  Plaintiff admits he then fled in his vehicle, ran a red light, and entered

6  the freeway.  (Defs.' MSJ, Ex. A at 70:4-22, 118:17-25.)

7    Nevada Highway Patrol ("NHP") Officer Andrew Wintersteen ("Wintersteen")

8  observed Plaintiff on the interstate approaching from behind and activated his lights and

9  sirens.  (Defs.' MSJ, Ex. F at 1.)  Wintersteen attempted to slow Plaintiff's vehicle, but

10  Plaintiff passed him by swerving and then driving in the left shoulder.  (Id. at 2.)  As he

11  passed Wintersteen, Plaintiff side-swiped the NHP vehicle and continued driving on the

12  freeway.  (Id.)  Plaintiff was aware that four or five police vehicles were following him, but

13  he did not pull over.  (Defs.' MSJ, Ex. A at 71:12-22.)  Plaintiff states he was not driving at

14  a high rate of speed because he wanted to ensure he was safe.  (Id. at 64:3-4.)  The pursuit

15  continued for approximately fifteen minutes, during which time other officers made several

16  unsuccessful attempts to slow Plaintiff's vehicle by using stop sticks and "boxing in" the

17  vehicle.  (Defs.' MSJ, Ex B at 2, Ex. J at 2.)  Finally, officers performed a Pursuit

18  Intervention Technique, disabling Plaintiff's vehicle and ending the pursuit.  (Defs.' MSJ,

19  Ex. I at 2.)  Plaintiff maintains he voluntarily brought his vehicle to a stop.  (Defs.' MSJ,

20  Ex. A at 87:17.)

21    Once stopped, Plaintiff remained inside the vehicle with his seatbelt fastened and

22  the doors locked.  (Defs.' MSJ, Ex. A at 94:13-17, Ex. H at 6.)  From his position in the

23  driver's seat, Plaintiff states he easily could have reached down to pick up the gun from the

24  floor of the vehicle.  (Defs.' MSJ, Ex. A at 126-127:10.)  According to officers, Plaintiff

25  refused to exit the vehicle despite verbal commands and it appeared he was attempting to

26  restart the vehicle.  (Defs.' MSJ, Ex. J at 2, Ex. K at 1.)  While Plaintiff was still inside the

1   vehicle, Officer Eric Kerns  broke the passenger side window and released K9 Bruce inside.

2   (Defs.' MSJ, Ex. K at 1.)  K9 Bruce bit Plaintiff on the neck, then released and bit Plaintiff

3   on the hip.  (Id.)

4   　　　Officer Nesheiwat then broke the driver's side window, opened the door, and

5   pulled Plaintiff out of the vehicle.  (Defs.' MSJ, Ex. M at ¶ 14.)  As Plaintiff was exiting the

6   vehicle, he broke free from K9 Bruce and attempted to get to his feet.  (Defs.' MSJ, Ex. M

7   at ¶ 14, Ex. K at 3.)  Defendant Officer Samual Carrillo ("Carrillo") then released K9 Radar

8   who bit Plaintiff on the hand.  (Id. at ¶ 16-17.)  According to Carrillo, Plaintiff pulled away

9   from K9 Radar and continued trying to get to his feet.  (Id. at ¶ 17.)  Plaintiff testified that

10  K9 Radar bit him before the officers were able to place him in handcuffs.  (Defs.' MSJ, Ex.

11  A at 98:15-18.)  According to Carrillo, Plaintiff was swinging his arms away from Officer

12  Nesheiwat and could not be subdued.  (Defs.' MSJ, Ex. M at ¶ 17.)  Plaintiff states he was

13  compliant and did not resist arrest.  (Defs.' MSJ, Ex. A at 97:4-11.)

14  　　　After officers were able to gain control of Plaintiff, the dogs were called off and

15  medical attention was requested.  (Defs.' MSJ, Ex. M at ¶ 18.)  Plaintiff sustained two large

16  cuts to his neck, punctures to his hip, and lost the tip of his right index finger as a result of

17  the dog bites.  (Defs.' MSJ, Ex. K at 1, Ex. A at 102:8-15.)

18  　　　Officers arrested Plaintiff for discharging a firearm, evading a police officer,

19  resisting a police officer, possession of an unregistered firearm and other charges.  (Defs.'

20  MSJ, Ex. H at 7.)  Subsequently, Plaintiff pled guilty to a felony for failure to stop on police

21  signal and served time.  (Defs.' MSJ, Ex. A at 14:5-8.)  Plaintiff thereafter brought suit

22  against the Clark County Sheriff, LVMPD, Officers Terry, Carrillo and Clevenger, and

23  NHP Officer Wintersteen, alleging Defendants violated his Fourth Amendment rights

24  ///

25  ///

26  ///

1    during the arrest.[1]

2          Plaintiff claims the officers used excessive force when they commanded the K9s

3    to attack him even though he was compliant.  Plaintiff also contends that Officers Terry and

4    Clevenger violated his rights because they were present during the arrest and condoned the

5    actions which caused his injury.  Plaintiff seeks compensatory and punitive damages.

6    Defendants now move for summary judgment, arguing the force used was reasonable under

7    the circumstances and they are entitled to qualified immunity.  In response, Plaintiff

8    maintains the use of force was excessive.

9    **II.  LEGAL STANDARD**

10         Summary judgment is appropriate, "if the pleadings, the discovery and disclosure

11   materials on file, and any affidavits show that there are no genuine issues as to any material

12   fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

13   A fact is "material" if it might affect the outcome of a suit as determined by the governing

14   substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is

15   "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the

16   non-moving party.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir.

17   2002).  Initially, the moving party bears the burden of proving there is no genuine issue of

18   material fact.  Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002).  After the

19   moving party meets its burden, the burden shifts to the non-moving party to produce

20   evidence that a genuine issue of material remains for trial.  Id.  The Court views all

21   evidence in the light most favorable to the non-moving party.  Id.

22   ///

23

24   _____

25         [1] Plaintiff's First Amended Complaint alleges claims against Defendants in both their personal
     and official capacities.  Plaintiff's official capacity suits against Officers Terry, Clevenger, and Carrillo
     were dismissed on August 4, 2009.  (Order (Doc. #7).)  Plaintiff's claims against Defendant
26   Wintersteen were dismissed on November 5, 2009.  (Order (Doc. #20).)

**III.  DISCUSSION**

Title 42 U.S.C. § 1983 provides, "[e]very person who, under color of any statute . . . causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."  Section 1983 is not a source of substantive rights, but creates a cause of action against a state or local official who deprives a person of rights guaranteed by the Constitution.  Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). To establish a claim under § 1983, a plaintiff must allege a violation of a constitutional right, and that the alleged violation was committed by a person acting under color of state law.  Henderson v. City of Simi Valley, 305 F.3d 1052, 1056 (9th Cir. 2002).

The Fourth Amendment protects "[t]he right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures . . . . "  U.S. Const. amend. IV.  A "seizure" occurs when a law enforcement official restricts the freedom of a person through physical force.  United States v. Washington, 387 F.3d 1060, 1068 (9th Cir. 2004).  Because an arrest constitutes a seizure, the Fourth Amendment protects citizens from unreasonable use of force during arrest.  Miller v. Clark County, 340 F.3d 959, 961 (9th Cir. 2003).

Claims for excessive use of force are evaluated under the Fourth Amendment's "objective reasonableness" standard.  Graham v. Conner, 490 U.S. 386, 388 (1989). Reasonableness of force used during arrest is determined by weighing the intrusion on the individual's Fourth Amendment rights against the countervailing government interests at stake.  Id. at 396.  The gravity of the intrusion on the individual's Fourth Amendment rights is determined by evaluating the type and severity of force used.  Chew v. Gates, 27 F.3d 1432, 1440 (9th Cir. 1994).  In considering the government's interests, relevant factors include whether the suspect posed an immediate threat to the safety of the officer or others, whether the suspect was actively resisting arrest or attempting to evade arrest by flight, and

5

the severity of the crime at issue.  Graham, 490 U.S. at 396.  Additional considerations such as whether the suspect was armed and whether the suspect was sober may be relevant. Chew, 27 F.3d at 1441 n.5.  Evidence that officers attempted to use less forceful means of apprehension also may be relevant in determining whether the force used was reasonable. Miller, 340 F.3d at 966.  Taking all circumstances into account, the reasonableness of force used should be "judged from the perspective of a reasonable officer on the scene," allowing for the fact that officers must make split-second decisions in rapidly evolving situations. Graham, 490 U.S. at 396.

The most important factor in determining reasonableness is whether the suspect posed an immediate threat to the safety of officers or others.  Chew, 27 F.3d at 1441.  A suspect who is armed, or previously has refused to comply with police demands, poses an immediate threat to the safety of officers.  Miller, 340 F.3d at 965.  Additionally, a suspect is a serious threat if there is probable cause to believe the suspect has committed a crime involving infliction or threatened infliction of serious physical harm.  Forrett v. Richardson, 112 F.3d 416, 420 (9th Cir. 1997), overruled on other grounds by, 127 F.3d 1136 (9th Cir. 1997).

A suspect is actively resisting arrest if he is aware police are chasing him and he flees.  Forrett, 112 F.3d at 420.  Even though a suspect may pause momentarily during flight, he still may be actively resisting arrest.  Miller, 340 F.3d at 965-66.  Additionally, evidence which shows that less forceful means of apprehension, such as control holds, were available is also relevant to determining the reasonableness of force used.  Smith v. City of Hemet, 394 F.3d 689, 703 (9th Cir. 2005) (genuine issue of material fact created by expert testimony that officers could have used control holds instead of K9s).

Reasonableness of force must be evaluated in light of the type of offense giving rise to the arrest.  Chew, 27 F.3d at 1442.  Whether the offense was a felony, violent, or involved a dangerous criminal are considered to determine the severity of the crime at issue.

Headwaters Forest Def. v. County of Humboldt, 240 F.3d 1185, 1204 (9th Cir. 2000)

vacated on other grounds by, 534 U.S. 801 (2001); see also Smith, 394 F.3d at 702.

Finally, the reasonableness of force used must be evaluated, "in light of all the relevant circumstances." Hammer v. Gross, 932 F.2d 842, 846 (9th Cir. 1991) (emphasis omitted). The force used must be reasonably necessary to effectuate arrest under the circumstances. Miller, 340 F.3d at 966. For example, use of a police dog was reasonable when the plaintiff fled from a bank robbery, was believed to be armed, and was hiding in a residential neighborhood. Mendoza v. Block, 27 F.3d 1357, 1362-63 (9th Cir. 1994). However, use of police dogs may not have been reasonable where the suspect initially was stopped for a traffic violation, was unarmed, did not engage in any threatening behavior, and had been hiding quietly for two hours at the time of arrest. Chew, 27 F.3d at 1441-42.

Qualified immunity, "protects government officials from civil liability as long as, 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity requires a two part inquiry: first, whether the facts alleged by a plaintiff establish a violation of a constitutional right; and second, whether the right at issue was clearly established. Pearson, 129 S. Ct. at 815-16. If no constitutional right was violated based on the facts alleged by the plaintiff, no further inquiry is required. Saucier v. Katz, 533 U.S. 194, 201 (2001).[2]

Here, there are no genuine issues of material fact that Plaintiff suffered serious injury as a result of the dog bites. The bites caused damage to Plaintiff's anterior jugular vein and resulted in the loss of the tip of his right index finger. The intrusion on Plaintiff's

[2] The Supreme Court recently held that the rigid two step-inquiry from Saucier v. Katz is no longer mandatory, however it is often beneficial. Pearson, 129 S. Ct. at 818.

Fourth Amendment rights was serious.

As to the governmental interests at stake, no genuine issue of material fact remains that Plaintiff posed an immediate threat to the safety of officers and others. It is undisputed that all times prior to the arrest, Plaintiff possessed a firearm which he previously had discharged in a residential neighborhood. Plaintiff acknowledges he easily could have picked up the gun while in his vehicle and he does not provide evidence that he relinquished the gun prior to his arrest. Furthermore, Plaintiff was a safety threat to officers and others due to his active flight from police and intentional collision with an occupied police vehicle attempting to stop him.

Further, no genuine issue of material fact remains that Plaintiff actively fled from officers attempting to effectuate an arrest. Although Plaintiff pulled over during the initial traffic stop, he admits he then fled from officers. While on the freeway, Plaintiff was aware multiple police vehicles were attempting to stop him but he did not pull over. Moreover, Plaintiff does not dispute he ran a red light and drove in the left shoulder of the freeway. Even assuming Plaintiff ultimately stopped his vehicle voluntarily, he actively fled by previously refusing to comply with officer's demands to pull over.

Additionally, no genuine issue of material fact remains that Plaintiff was resisting arrest prior to officers releasing the K9s. Plaintiff states that once he was down on the ground he was compliant and did not resist arrest. However, prior to that, Plaintiff had refused to comply with verbal commands to exit the vehicle. Once outside the vehicle, Plaintiff resisted arrest by attempting to get to his feet and physically struggling with Officer Nesheiwat. Plaintiff presents no evidence raising a genuine issue of material fact that he was compliant before Officer Carrillo released K9 Radar. Furthermore, Plaintiff has not produced evidence indicating other less forceful means of apprehension would have been more effective under the circumstances.

///

8

Finally, no genuine issue of material fact remains that Defendants initiated contact with Plaintiff because he committed serious crimes.  Officers believed Plaintiff posed a risk to others because he had discharged his weapon multiple times in a residential neighborhood.  Even though Plaintiff asserts he did not fire the gun at anyone, he still placed others at risk of injury from gunfire.  Additionally, based on the report from Perez, officers believed that Plaintiff was intoxicated and operating his vehicle, creating a potential risk to other motorists.  Plaintiff's criminal conduct escalated further when he refused to pull over, leading officers on a pursuit and attempting to evade arrest by hitting an occupied police car.  Thus, Plaintiff does not raise any genuine issues of material fact regarding the severity of the crimes for which he was arrested.

In sum, Plaintiff undisputably suffered serious injury, but prior to the use of force, he posed an immediate threat to the safety of officers and others, actively fled, and committed serious crimes.  Leading up to the arrest Plaintiff repeatedly defied officers' commands and endangered officers' safety.  No genuine issues of material fact remain that the use of force occurred prior to Plaintiff's compliance.  At the end of the pursuit, officers were confronted with an armed suspect who refused to exit his vehicle, prompting release of K9 Bruce.  Plaintiff presents no evidence that Officer Carrillo released K9 Radar after Plaintiff was on the ground compliantly yielding to arrest.  Viewing the evidence in the light most favorable to Plaintiff, no genuine issues of material fact remain that the force used was reasonable under the circumstances.

No Fourth Amendment violation occurred, therefore no further inquiry into qualified immunity is necessary.  Accordingly, the Court will grant Defendants' motion for summary judgment.[3]

---

[3] Plaintiff's complaint asserts that Defendants Terry & Clevenger violated his Fourth Amendment rights because they were present during the arrest and condoned the actions which caused his injury.  Because the force used was not excessive, Defendants Terry and Clevenger did not violate

1   **III. CONCLUSION**

2          IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment

3   (Doc #38) is hereby GRANTED.

4          IT IS FURTHER ORDERED that Judgment is hereby entered in favor of

5   Defendants Justin Terry, Samual Carrillo, and Thomas Clevenger, and against Plaintiff

6   Steven Martus.

7

8   DATED: March 22, 2011

9

10   _____

11                          PHILIP M. PRO
                     United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

Plaintiffs' Fourth Amendment rights by condoning the actions.  Moreover, Plaintiff has not made a
25   showing that Officers Terry and Clevenger personally participated in the conduct which caused his
injuries, because there is no evidence Officers Terry and Clevenger released the K9s.  See Jones v.
26   Williams, 297 F.3d 930, 934 (9th Cir. 2002).